```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

| | | |
|---|---|---|
| Michael Sylvester and Dawn Sylvester, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 18 C 5860 |
| Select Portfolio Servicing, Inc., | ) ) ) ) | |
| Defendant | ) | |

<u>Memorandum Opinion and Order</u>

Plaintiffs in this action are homeowners and Chapter 11 debtors whose bankruptcy case, formerly pending in this district, was closed in September of 2016, upon the bankruptcy court's confirmation of a Plan of Reorganization (the "Plan"). In this action, they allege that one of their creditors, SPS—the loan servicer and successor in interest to JPMorgan Chase Bank, which issued plaintiffs a mortgage loan secured by their home—violated the Fair Debt Collection Practices Act and various state laws by seeking to collect amounts in excess of those plaintiffs was required to pay under the Plan. The complaint alleges that according to the Plan, plaintiffs—who continue to live in their home—must make monthly payments to SPS in the amount of $2,456.82, plus $1,079.55 in monthly arrears. Plaintiffs allegedly made those payments consistently—and SPS

consistently accepted them—until June of 2018, when SPS suddenly refused payment and began demanding immediate payment of over $50,000 to "cure the late balance" on plaintiffs' mortgage; telling plaintiffs that they had "no bankruptcy protections" regarding the allegedly overdue balance; and threatening to foreclose and sell plaintiffs' home, among other false, misleading, and harassing statements.

Defendant answered the complaint with respect to the FDCPA claim but moved to dismiss plaintiffs' remaining claims, which assert violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); violations of the Indiana Deceptive Consumer Sales Act ("IDCSA"); breach of contract; and violation of the confirmed Chapter 11 Plan. While that motion was pending, plaintiffs moved to withdraw the reference to the bankruptcy court. For the following reasons, defendant's motion is granted as to plaintiffs' claims arising under state law (Counts II, III, and IV) and denied as to Count V. Plaintiffs' motion is denied.

Defendant's overarching argument for dismissal, which targets all claims except the FDCPA claim, is that each of these claims is preempted by the Bankruptcy Code. State law claims are preempted if they "arise under" the Bankruptcy Code, are "related to" a bankruptcy case, or "arise in" bankruptcy. *In re Repository Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010). Courts in this district have held that the "expansive reach" of the Bankruptcy Code "preempts virtually

2

all claims relating to alleged misconduct in the bankruptcy courts." *Cox v. Zale Delaware*, No. 97 C 4464, 1998 WL 397841, at *5 (N.D. Ill. July 13, 1998) (Castillo, J.) ("*Cox I*") (unjust enrichment claim preempted). In addition, the Code preempts state claims that "would not exist but for some violation of the Code." *Bednar v. Pierce & Associates, P.C.,* 220 F. Supp. 3d 860, 863 (N.D. Ill. 2016) (ICFA claim premised on violation of automatic stay preempted). *See also Booker v. New Penn Financial, LLC,* 575 B.R. 823, 827-28 (N.D. Ill. 2017) (same); *Hahn v. Anselmo Lindberg Oliver LLC,* No 16 cv 6908, 2017 WL 1196955, at *5 (N.D. Ill. Mar. 31, 2017) (Alonso, J) (same); *Twomey v. Ocwen Loan Servicing, LLC*, No. 16 C 918, 2016 WL 4429895, at *2 (N.D. Ill. Aug. 22, 2016) (Lee, J.) ("Time and again, courts in this district have held that the Bankruptcy Code preempts the field when it comes to remedying violations of injunctive orders issued by bankruptcy courts."); *Holloway v. Household Automotive Finance Corp*., 227 B.R. 501, 507 (N.D. Ill. 1998) (ICFA claim preempted); *In re Lenior*, 231 B.R. 662, 675 (Bankr. N.D. Ill. 1999) (unjust enrichment claim preempted). As these cases reflect, preemption of state claims arising out of conduct closely tied to bankruptcy proceedings is the norm.

Nevertheless, courts have declined to hold state law claims preempted in cases where the defendants' alleged misconduct goes beyond violations of the Code, or where granting relief under state law would not conflict with any provision of the Code. *See Long v.*

3

*Bank of America, N.A.,* 2018 WL 5830794, at *2-*3 (N.D. Ill. Nov. 7, 2018) (Alonso, J.) (breach of contract claim alleging violation of a private contract settling sanctions action in bankruptcy court not preempted); *Freeman v. Ocwen Loan Servicing, Inc.*, No. 15 C 11888, 2016 WL 3476681, at *7 (N.D. Ill. June 27, 2016) (analyzing preemption under "implied repeal" framework of *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) and concluding that ICFA claim was not preempted by Bankruptcy Code); *In re Lakowski*, 384 B.R. 518, 529-30 (Bankr. N.D. Ind. 2008) (state law breach of contract claim based on lender's post-confirmation efforts to collect payments on mortgage not preempted); *Wagner v. Ocwen Federal Bank, FSB*, No. 99 C 5404, 2000 WL 1382222 at *3 (N.D. Ill. Aug. 28, 2000) (Kennelly, J) (declining to hold ICFA claim preempted, noting that defendant was not assigned note and mortgage until after bankruptcy discharge, and observing that unlike in *Cox v. Zale Delaware, Inc.*, 242 B.R. 444 (N.D. Ill. 1999) *aff'd*, 239 F.3d 910 (7th Cir. 2001) ("*Cox II*"), it could not be said that "there would be no cause of action absent the [Bankruptcy] Code in this case." (quoting 242 B.R. at 450)(alteration in *Wagner*).

Having reviewed the substantial body of case law cited above, I conclude that plaintiffs' state law claims are preempted by the Bankruptcy Code because they assert rights created by operation of the bankruptcy laws and embodied in the Plan of Reorganization. Indeed, plaintiffs' allegations make clear that SPS's conduct is

4

unlawful, if at all, because it violates the terms of the Plan.[1] The second paragraph of the complaint explicitly tethers plaintiffs' claims to the Plan, alleging that "[t]he factual basis of the claims stated herein stem from the continued wrongful servicing debt collection from SPS *in violation of the Confirmed Chapter 11 Plan of the Plaintiffs*." Compl. at ¶ 2 (emphasis added). In allegations specific to their ICFA and IDCSA claims, plaintiffs claim that defendant violated these statutes attempting "to collect a debt that was not in default under the Confirmed Plan," *id*. at ¶ 64, and "demanding payment on a delinquent account from Plaintiffs when they were contractually current under the confirmed Chapter 11 Plan of Reorganization," *id*. at ¶ 78. These allegations make clear that plaintiffs' ICFA and IDCSA claims are inexorably tied to rights created and administered under the bankruptcy laws and are thus barred by principles of conflict preemption. *See In re Repository Techs*., 601 F.3d at 723 (acknowledging that "the bankruptcy statutes have significant preemptive force" that bars claims based on "violations of the Bankruptcy Code for which the Code itself and Rules provide other remedies") (quoting *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 702 (Bankr. N.D. Ill. 1999)).

---

[1] It is true that the complaint alleges certain pre-petition representations by Chase regarding plaintiffs' eligibility for loan modification. Compl. at ¶¶ 12-13. It is not apparent, and plaintiffs do not explain, how those allegations support any of their claims. Accordingly, the fact that they refer to statements made outside the context of bankruptcy does not alter the preemption analysis.

5

It is true that *In re Lakowski*, 384 B.R. 518, and *Wagner*, 2000 WL 1382222, offer some support for the contrary view. As in this case, the alleged misconduct in those cases occurred post-confirmation, which in the *In re Lakowski* court's view meant that there was "little risk that allowing Plaintiff's state law claims for breach of contract to go forward will disrupt the uniform application of the federal bankruptcy laws or contravene congressional purpose." *Id*. at 529-30 (citation and ellipses omitted). But plaintiffs do not cite these cases (or any other case in their favor for that matter), and, in any event, several factors set that case apart from this one. First, the creditor in *In re Lakowski* failed to develop its preemption argument. *See* 384 B.R. at 529 (noting that creditor "never discussed the principles governing federal preemption of state law."). Second, the misconduct alleged in that case occurred not only after confirmation of the plan, but after the bankruptcy Trustee determined that all "Plan payments had been completed and that there were sufficient funds to pay all unsecured creditors in full." *Id*. at 522. Similarly, in *Wagner*, the alleged misconduct occurred after the debt had been discharged, and the defendant had not even been assigned the note and mortgage until after discharge. *See* 2000 WL 1382222, at *1-*2.

Here, by contrast, plaintiffs' debt has not been discharged, nor do they claim to have made all payments contemplated by the Plan, which continues to govern their payment obligations to other

6

creditors whose rights may indeed be affected if plaintiffs are permitted to pursue state claims against defendant. Further, notwithstanding the administrative closure of plaintiffs' bankruptcy case, the bankruptcy court "retains jurisdiction to protect the confirmation order, prevent interference with the execution of the plan, and otherwise aid in the plan's operation." *In re Castle Home Builders, Inc.*, 520 B.R. 98, 101 (Bankr. N.D. Ill. 2014) (citations omitted). *See also In re Emerald Casino, Inc.*, 334 B.R. 378, 386-87 (N.D. Ill.2005) (recognizing a bankruptcy court's broad authority to order parties to comply with terms of a confirmed plan of reorganization). For these reasons, I am not persuaded that plaintiffs' state claims escape preemption for the reasons cited in *In re Lakowski* and *Wagner*.

Further, although plaintiffs strain to suggest that their breach of contract claim is premised on some agreement that predates and is independent of the Plan, their allegations do not reasonably support that construction. Plaintiffs allege that "[p]rior to September 6, 2016, SPS and Plaintiffs entered into an agreement as to the term for repayment and the Chapter 11 Plan of Reorganization," and that "SPS through Chase accepted the agreement by filing its Ballot on September 6, 2016 accepting the Plan." Compl. at ¶¶ 84-85. But rather than describing a distinct agreement, these allegations simply reaffirm that the agreement the parties reached,

7

and that defendant allegedly breached, is the Plan itself. These allegations support preemption.

What is not preempted, however, is Count V of the complaint, which asserts "Violation of the Confirmed Chapter 11 Plan Injunction." Although plaintiffs do not identify the source of the rights they assert in this count, the only reasonable interpretation is that it arises under 11 U.S.C. § 142(b), "which empowers the court to direct the debtor and any other necessary party to perform acts 'necessary for the consummation of the plan.'" *In re Castle Home Builders, Inc.*, 520 B.R. at 101 (quoting *In re Kmart Corp.*, 359 B.R. 189, 195 (Bankr. N.D. Ill. 2005). Defendant's argument for dismissal of this claim conflates principles of preemption, which concern whether a federal statute extinguishes rights asserted under state law, with the question of the bankruptcy court's subject matter jurisdiction. A preempted state claim cannot be asserted in *any* court; a claim that falls within the exclusive jurisdiction of the bankruptcy court is one that must be asserted, if at all, in that court. Although defendant asserts that Count V is "preempted," the substance of its argument suggests that only the bankruptcy court has the power to adjudicate it. *See* Def.'s Mem. at 6 (arguing that under N.D. Ill. L.R. 40.3.1.(a), all proceedings arising under or related to Title 11 U.S.C. "are referred to bankruptcy judges of this district."). That argument lacks merit.

In support of its argument, defendant relies on *Price v. Seterus*, Inc., No. 15 C 7541, 2016 WL 1392331 (N.D. Ill. Apr. 8, 2016) (Kendall, J.), and *Kim v. Fayazi*, No. 96 C 6966, 1998 WL 729753, at *3 (N.D. Ill. Oct. 14, 1998) (Williams, J.). It is true that in both cases, the court dismissed claims brought under Title 11 without prejudice on the ground that the bankruptcy court was the appropriate forum for the claims. But neither case suggests that the bankruptcy court is the exclusive forum for bringing such claims. To the contrary, the *Kim* court acknowledged the "rule" in this district that "all cases under or relating to Title 11 are referred to the Bankruptcy Courts of this district," but recognized that "district courts have jurisdiction over Title 11 cases." 1998 WL 729753, at *3. I also note that the court's rationale for dismissing the claim in *Price* was that "it may be inefficient for the parties to have two ongoing claims in two separate Courts," 2016 WL 1392331, at *6—the precise situation that would obtain if Count V were dismissed for refiling in the bankruptcy court, while their FDCPA claim remains pending in this court. For these reasons, I deny defendant's motion to dismiss Count V.

Plaintiffs' motion to withdraw the bankruptcy reference warrants little discussion. Setting aside that the motion generally echoes defendant's confusion regarding the concepts of preemption and bankruptcy court jurisdiction, the motion is perplexing in that the claims it seeks to "withdraw" do not appear to be pending in the

9

bankruptcy court. So far as the record reveals, there is nothing to "withdraw." At all events, because plaintiffs' state claims are preempted, dismissal with prejudice—not referral to the bankruptcy court—is the appropriate disposition of those claims. And although plaintiffs could pursue Count V in the bankruptcy court, the better course is for it to remain pending in this court.

For the foregoing reasons, defendant's motion to dismiss is granted in part. Plaintiff's motion to withdraw the reference to the bankruptcy court is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 6, 2019